**Charles L. ECHOLS**

**v.**

**E. B. CALDWELL, Warden, Georgia State Prison.**

**Civ. A. No. 15384.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 17, 1971.

S. Richard Rubin, Bonner & Rubin, Atlanta, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen., William F. Bartee, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

EDENFIELD, District Judge.

Petitioner, a prisoner incarcerated in the Georgia State Prison in Reidsville, was given leave to file in forma pauperis a petition for the writ of habeas corpus. An evidentiary hearing was held and the court has concluded that evidence upon which petitioner was convicted was tainted by an unconstitutional lineup. Although the testimony in the case is in some conflict, the court will recite the facts as it understands them.

On January 9, 1969 two men robbed an Atlanta liquor store run by Abe Schaffer. At trial, Mr. Schaffer testified that the two men first entered the store at 8:30 A.M., bought some brandy, and left. They returned several minutes later and pulled out two guns. According to the offense report, Mr. Schaffer told the police that perpetrator No. 1—later identified by Mr. Schaffer at trial as petitioner—forced him to open the cash registers and directed him to a back room where other money was kept in a cabinet. The men took the money and left. Mr. Schaffer reported the occurrence to the police who arrived within twenty minutes. He told them that perpetrator No. 1 was a black male, 30 years old, 5'8" tall, weighing 145 lbs., wearing a long grey overcoat and a dark hat, and armed with a revolver. Mr.

Schaffer described perpetrator No. 2 as a black male, 25 years old, 5'6" tall, weighing 155 lbs., wearing a brown leather jacket and cap, and also armed with a revolver. At trial Mr. Schaffer testified that after seeing the perpetrators twice that morning he became certain of their physical identities.

On January 23, 1969, two weeks later, Mr. Schaffer's liquor store was robbed again. At trial, Mr. Schaffer testified that a single man—later identified by Mr. Schaffer at trial as petitioner—entered the store and lingered by a cigarette machine for some ten minutes while Mr. Schaffer waited on other customers. Mr. Schaffer then asked the man: "Could I help you, young man?" The subject replied: "No, go right ahead, I have got plenty of time." The subject remained in the store as other customers came and went, and then he ordered some liquor from Mr. Schaffer. At this point, according to Mr. Schaffer's trial testimony, the subject's face was turned away from Mr. Schaffer. After all the other customers left the store the subject pulled out a gun and proceeded to rob Mr. Schaffer. Again Mr. Schaffer called the police and two detectives arrived within ten minutes. Mr. Schaffer described the single perpetrator as a black male, 30 to 33 years old, 5'5" to 5'6" tall, wearing a grey and black plaid hat and a white all-weather raincoat. At no time did Mr. Schaffer state that he recognized the perpetrator of the second robbery, or that this perpetrator was one of the two men who had committed the first robbery, even though the second robbery occurred only two weeks after the first.

The Atlanta police subsequently received a tip that petitioner had robbed Mr. Schaffer and on February 14 Detective Lee took petitioner's photograph and nine others to Mr. Schaffer's store. Mr. Schaffer identified petitioner's photograph as the photograph of the man who had robbed him the second time. According to the testimony of Detective Lee before this court, Mr. Schaffer did

not, even after identifying petitioner's photograph, indicate that petitioner was also one of the perpetrators of the first robbery. The police proceeded on the assumption that petitioner had committed the second robbery only, and they secured a warrant for petitioner's arrest. The arrest was effected in the early hours of February 15 and petitioner was placed in the city jail.

Later in the morning of February 15 Detective Lee visited petitioner, informed him that he was charged with the January 23rd robbery of Mr. Schaffer's store, and orally advised him of his constitutional rights. He did not, however, type up or show petitioner at this point the standard waiver-of-counsel form which the police department uses, nor did petitioner express any desire to waive counsel or to waive any of his other rights. Detective Lee then told petitioner that he was going to be placed in a lineup. According to Detective Lee petitioner then said the detectives should put him in the lineup because nobody would identify him as the robber. Petitioner denies ever making such a statement. In any event, it is uncontroverted that petitioner made no statements expressing a desire to waive counsel and that no waiver-of-counsel form was either presented to or signed by petitioner at this point. Absent such waiver by petitioner, the lineup which was subsequently held without the presence of counsel was an unconstitutional procedure. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

After Detective Lee had spoken with petitioner, he contacted Mr. Schaffer and asked him to appear. Petitioner was taken to a lineup room which was medium-sized and had a stage at the front. When petitioner was brought into the room, it was unlit except for the stage lights. According to petitioner, as he stood in the lineup he saw Mr. Schaffer and a police officer standing in the back of the room. Then, according to petitioner, Detective Lee addressed petitioner by name, within earshot of

Mr. Schaffer, and told him he could stand wherever he wished on the line, except for the two ends. Petitioner answered that he was satisfied with the place he was occupying. On direct examination before this court, Detective Lee testified that he was absolutely certain that neither Mr. Schaffer nor anyone else beside himself and the men in the lineup were in the room at this point, and that Mr. Schaffer was in fact at the switchboard in the front office. On cross-examination, however, Detective Lee testified that he did not know where Mr. Schaffer was at this point, and he agreed it was possible that someone on the stage could see someone in the passageway at the back of the lineup room and vice versa. In any event, Mr. Schaffer was called and he observed the men in the lineup. Thereafter, in the office of the detectives, he correctly named the spot in the lineup in which petitioner had stood.

Petitioner was escorted back from the lineup to an office. Detective Lee now, for the first time, typed up a waiver-of-counsel form and read it to petitioner. However, petitioner refused to sign, and he told Detective Lee that a female lawyer was on the way to the station to help him. Petitioner was then taken before a judge for the preliminary hearing and bound over. On the way back from the hearing petitioner indicated to one of the police officers that he could establish an alibi. Petitioner was taken back to the detectives' office and told that no statements could be taken from him unless he signed the waiver-of-counsel form. Although the testimony on this matter is a bit confusing, it seems that petitioner did read the waiver form and was also orally advised of his rights by the detectives. He then signed the waiver and made a statement to the effect that he was working on a construction project at the time the robbery was committed. Finally, at some point after the lineup and perhaps after the preliminary hearing, Mr. Schaffer told the police that petitioner was also one of the men who had robbed him the first time

on January 9th. Petitioner was indicted on two counts for the two robberies, tried, convicted, and sentenced to two consecutive terms of five years each.

■ Petitioner first attacks the testimony at trial concerning his alibi. Although the alibi statement itself was not introduced into evidence, the prosecution did elicit testimony from the police concerning the making of the alibi statement and then put the owner of the construction company involved on the stand to testify that he had no records showing petitioner was working for him at the times involved. Under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), neither inculpatory statements nor exculpatory statements such as alibis may be used against an accused if he was denied counsel when the statements were made. However, the court finds that petitioner did voluntarily and knowingly waive his right to counsel before he made the alibi statement, and his *Miranda* attack must fail.

■■ Petitioner's second attack concerns the lineup. As the court has already noted, the lineup violated the *Wade* standard and was unconstitutional. Clearly petitioner had not waived counsel before the lineup took place; indeed, even after the lineup, he expressly stated that he had a lawyer who was on the way to help him and he refused to sign anything until she arrived. At trial, both Mr. Schaffer and Detective Lee gave substantial testimony about the lineup identification. Since the lineup was unconstitutional, such testimony is subject to the per se exclusionary rule and the State is not entitled to show it may have had an independent source. Gilbert v. California, 388 U.S. 263, 272–274, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Rivers v. United States, 400 F.2d 935, 941 (5th Cir. 1968). There is a reasonable possibility that this testimony contributed to the conviction of petitioner since the only evidence the prosecution presented at trial was the identification testimony by Mr.

Schaffer. This court cannot, therefore, say that the admission at trial of the testimony concerning the unconstitutional lineup was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For this reason alone petitioner would be entitled to the relief he seeks.

In addition, respondent has not shown by clear and convincing evidence that the in-court identifications of petitioner by Mr. Schaffer were based upon observations other than the lineup. United States v. Wade, *supra,* at 240, 87 S.Ct. 1926. Mr. Schaffer identified petitioner in court as the man who robbed him January 23rd and as one of the men who robbed him January 9th. Aside from the lineup, these in-court identifications could have been based only on Mr. Schaffer's observations of petitioner during the course of the two robberies and his observation of petitioner's photograph when he was presented with the set of photographs by Detective Lee on February 14th. Although Mr. Schaffer testified at trial that after seeing the robbers twice January 9th he had become certain of their identities, he did not indicate to the police on January 23rd that the man who committed the second robbery was one of the men who committed the first robbery two weeks before. When presented with the photographs, Mr. Schaffer did identify petitioner as the man who committed the second robbery, but again he did not state at this time that petitioner was also one of the men who perpetrated the first robbery. Detective Lee admitted in the hearing before this court that only after the lineup and perhaps after the preliminary hearing did Mr. Schaffer indicate that petitioner participated in the first robbery. The court is not convinced that the in-court identification with respect to the first robbery had a source independent of the lineup observation.

As to the second robbery, respondent may be correct that the in-court identification had an origin independent of the lineup. However, the Supreme Court in

*Wade* listed certain factors this court should consider in this matter:

" . . . [T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." At 241, 87 S.Ct. at 1940.

■ In the instant case it is, of course, true that Mr. Schaffer identified petitioner's photograph before the lineup took place. However, he also testified at trial that he did not get a good look at petitioner during the second robbery because petitioner's face was turned away from him. Furthermore, the description Mr. Schaffer gave the police after the second robbery was of a black male, 30 to 33 years old. Mr. Schaffer also testified at trial that on the day of the second robbery he first addressed petitioner by saying: "Could I help you, young man?" Petitioner, though a black male, is 52 years old. Finally, as the court has already noted, Mr. Schaffer failed to identify petitioner during the course of the second robbery and failed to implicate him as one of the two perpetrators of the first robbery even after seeing his photograph, although at trial he testified he became certain of petitioner's identity after the first robbery. These factors are by no means conclusive.[1] But by the same token, the court cannot say that respondent has shown through clear and convincing evidence that the in-court identification as to the second robbery was of an untainted and independent origin.[2]

Accordingly, the court is constrained to find that petitioner's conviction rests

---

1. Another factor to which the court has given some consideration is petitioner's account of the lineup itself. The Supreme Court mentioned that such a factor, too, should be considered in the overall evaluation of the in-court identification. United States v. Wade, *supra*, at 241, 87 S.Ct. 1926.

2. In United States v. Gilbert, supra, the Supreme Court held that as to in-court identifications the prosecution must be afforded

"the opportunity to establish that the in-court identifications had an independent source, *or* that their introduction in evidence was in any event harmless." At 388 U.S. 272, 87 S.Ct. at 1956 (emphasis added).

From this statement it would appear that even if an in-court identification did not have a source independent of an unconstitutional lineup observation, its admission into evidence would not necessarily result in a new trial or the setting aside of a conviction if such admission were harmless error. This is the view of the Fifth Circuit in Rivers v. United States, *supra*, 400 F.2d at 941.

However, in the recent case of Lucas v. Texas, 451 F.2d 390 (1971), the Fifth Circuit, citing *Rivers*, held that the test is two-pronged; that is,

"the trier must find that the identification was of independent and untainted origin, *and further*, that the error was harmless beyond a reasonable doubt." At 392.

In Lucas the Fifth Circuit found that the in-court identification had an independent and untainted origin *and* that any error committed was harmless beyond a reasonable doubt.

If *Lucas* means what it says, even if this court found that the in-court identifications were not at all tainted by the unconstitutional lineup observation, it could still grant relief if it found that the admission of the in-court identifications was not harmless error beyond a reasonable doubt. Since, as the court has already noted, the only evidence of the prosecution at trial was the identification testimony of Mr. Schaffer, it was certainly harmful error to admit that testimony, even if it had an independent and untainted origin. Without that testimony petitioner would not have been convicted.

However, since the decision of this court can rest on other grounds, the court need not apply *Lucas* here. Indeed, the court questions whether the panel in *Lucas* intended to so broaden the *Gilbert* and *Rivers* approach to in-court identifications.

on evidence obtained through an unconstitutional procedure, and the State cannot justify its present custody of him. The State of Georgia is therefore ordered to either retry petitioner within 60 days of today or release him. The State is directed to inform the court of whichever step it has taken within 60 days. The Clerk of the Court is directed to resubmit the above-styled case to this court at the expiration of 60 days.